IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EARL. W. KINGSLEY,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        Civil No.  14-1173-JAR
                                     )
CAROLYN W. COLVIN,                   )
ACTING COMMISSIONER OF               )
SOCIAL SECURITY,                     )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of

Social Security denying Plaintiff Earl Kingsley's application for supplemental security income under Title

XVI of the Social Security Act.[1]  Because the Court finds that Defendant Commissioner's findings are

supported by substantial evidence, the Court affirms the decision of Defendant Commissioner.

## I.      Procedural History

On June 6, 2011,  Plaintiff protectively applied for supplemental security income, alleging

disability beginning on October 1, 1999.  Later, with counsel present, at the ALJ hearing, Plaintiff

amended the onset date to June 6, 2013.  Plaintiff's application was denied initially and upon

reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After

a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied

Plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought judicial review before

---

[1] 42 U.S.C. §§ 1381 *et seq.*

this Court.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is

supported by substantial evidence in the record as a whole and whether Defendant applied the correct

legal standards.[2]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[3]  In the course of its review, the

court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment."[5]  An individual

"shall be determined to be under a disability only if his physical or mental impairment or impairments are

of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy."[6]  The Secretary has established a five-step sequential evaluation process to

determine whether a claimant is disabled.[7]  If the ALJ determines the claimant is disabled or not

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

2

disabled at any step along the way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since June 6, 2011, the initially alleged onset date.  Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: osteroarthritis and joint dysfunction, bladder tumor, anxiety disorder, affective disorder, and alcohol and substance addiction disorders.  And Plaintiff does not expressly challenge the ALJ's determination at step three that none of his impairments or combination of impairments meet or equal a listing.

But Plaintiff challenges the ALJ's determination of his residual functional capacity ("RFC") to perform medium work with certain restrictions, albeit at less than the full range of medium work.  And, Plaintiff challenges the ALJ's ultimate determination that Plaintiff is not disabled.

## IV.    Discussion

Plaintiff, who is *pro se*, raises challenges to the ALJ's decision that are largely based on Plaintiff's misunderstanding of the sequential analysis, standards and rules of law pertaining to social security disability.  Because Plaintiff proceeds *pro se*, the Court recognizes that it must construe Plaintiff's pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[10]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[11] And,  a *pro se* litigant is not

---

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[10]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[11]*Id.*

excused from complying with the rules of the court and is subject to the consequences of noncompliance.[12]

Plaintiff raises several types of arguments, which the Court will address in turn.  First, Plaintiff argues that the ALJ's decision is inconsistent, because at step 2, the ALJ found that Plaintiff has severe impairments, yet at other steps, found that Plaintiff's impairments are not as severe as Plaintiff claims, that Plaintiff can perform medium work, that Plaintiff is employable, and that Plaintiff is not disabled. Plaintiff misunderstands the scope of the determination at step 2 of the sequential evaluation process, for a finding at step 2 does not imply any specific work-related restrictions for RFC purposes.[13] Furthermore, Plaintiff misunderstands that in determining whether someone is disabled, the ALJ determines whether, given the claimant's age, education, work experience and RFC, he either can perform past relevant work, or has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy; the ALJ is not required to consider whether there is a specific employer or a specific job for the claimant.[14]  And, in arguing that the ALJ inconsistently found that Plaintiff can perform medium work, but not the full range of medium work, Plaintiff misunderstands that when a claimant has non-exertional limitations, as well as exertional limitations, the ALJ may properly find that the claimant can do a certain category of work, but not the full range of work within that category.  "Where nonexertional limitations affect the range of

---

[12]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

[13]SSR 96-8p, 1996 WL 374184 *3 (July 2, 1996)(RFC is an issue only at steps 4 and 5 of the sequential evaluation process).

[14]*See* 20 CFR 416.905; 20 CFR 416.910; 20 CFR 416.920(a)(4)(iv)-(v).

work of which a plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics."[15]

Second, Plaintiff complains that the ALJ placed more weight on the opinions of the state agency consultant psychologists rather than the opinion of Dr. Knapp, a psychologist who actually examined him.  While Plaintiff does not further develop this argument, the Court has reviewed the ALJ's decision and the record and is satisfied that the ALJ properly evaluated the evidence and properly applied the standards for medical source opinions.

With respect to mental impairments, the ALJ's found that Plaintiff did not have marked or severe restrictions in the "Paragraph B" criteria of activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace; and the ALJ found that Plaintiff had not had repeated episodes of decompensation.  The ALJ concluded that Plaintiff had only mild restrictions in activities of daily living and moderate difficulties in social functioning, as well as maintaining concentration, persistence or pace.  The ALJ further found that Plaintiff's limitations did not satisfy the "Paragraph C" criteria, because Plaintiff did not have repeated episodes of decompensation, nor a current history of one or more years inability to function outside of a highly supportive living arrangement, nor a residual disease process resulting in such marginal adjustment that even a minimal increase in mental demands or a change in environment would likely cause decompensation.  These findings were then incorporated into the ALJ's RFC determination, which included these limitations: (1) his work tasks should not include group interaction; (2) he could tolerate changes in work setting with at least two days notice;

---

[15]*Gossett v. Bowen*, 862 F.2d 802, 806 (10th Cir.1988).

and (3) his work should have an emphasis dealing with things and objects rather than people.

From the Court's review of the record, it is apparent that the longitudinal record, including objective observations by treatment providers and Plaintiff's self-reported daily activities, support the ALJ's determination of RFC with these limitations.  In 2009, Plaintiff's treatment provider, Dr. Connell, noted that Plaintiff's depression and anxiety were related to his chronic alcoholism, which had gone untreated.  Dr. Connell recommended a detoxification program, psychotherapy and medication.  Thereafter, in 2010 and until August 2011, Plaintiff reported that the medications controlled and improved his symptoms.  His treating providers observed and noted that Plaintiff was alert, oriented, cooperative, and had normal speech, appropriate affect, and well-organized thought processes.  The treating providers recommended that Plaintiff increase his activities and social interactions.  After Plaintiff reported an increase in anxiety and panic, his medications were adjusted in November 2011, and in December 2011, Plaintiff again reported improvement.

Geordie Knapp, Ph.D., examined Plaintiff on several occasions and in 2010 and 2012 rendered opinions that Plaintiff had severe or marked limitations in his ability to learn new tasks or perform routine tasks, his ability to communicate and perform in a work setting with even with limited public contact, his ability to respond appropriately and tolerate the pressures and expectations of a normal work setting, and his ability to interact appropriately with the public, as well as co-workers and supervisors.  The ALJ properly evaluated and discredited Dr. Knapp's opinions, however, because the opinions were not supported by and were inconsistent with other credible, objective evidence.  While Dr. Knapp reported that Plaintiff had agoraphobia, Plaintiff reported being able to use public transportation without assistance, to travel to AA meetings, and to go shopping.  And, it is apparent that

Dr. Knapp's opinions were largely based on Plaintiff's self-reports of his activities and challenges.

In stark contrast, the state agency consulting psychologists, Patricia Kraft, Ph.D., and John Robinson, Ph.D., opined that Plaintiff had only moderate limitations in his ability to interact with the public and his ability to respond to changes in the work setting, and that Plaintiff would benefit from additional time to adapt to changes in the work setting.  Indeed, while Drs. Kraft and Robinson considered Plaintiff's subjective reports, unlike Dr. Knapp, they did not accept such reports at face value, but analyzed them in the context of other records.  Thus, Drs. Kraft and Robinson noted that there were inconsistent reports of Plaintiff's social functioning; in contrast to Plaintiff's subjective reports, there were records that showed Plaintiff has a girlfriend and a group of other friends, and participates in social activities.

The ALJ properly weighed Dr. Knapp's opinions with the other medical evidence in the longitudinal record, in particular with evidence based on objective observation rather than only on Plaintiff's subjective reports.  In so doing, the ALJ properly evaluated the evidence.  Any medical source's opinion of disability or employability is not dispositive.[16]  Final responsibility for determining ultimate issues, such as a claimant's RFC and whether a claimant is disabled, are reserved to the Commissioner.[17]  With respect to issues other than the ultimate issues, a treating source's opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is

---

[16]*Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

[17]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

"deficient in either respect, it is not entitled to controlling weight."[18]   The ALJ properly found that Dr.

Knapp's opinions were not well-supported, and in fact were inconsistent with other medical evidence,

including observations and evidence other than Plaintiff's subjective reports.

Of course, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating

source medical opinions are still entitled to deference."[19]   And, there is a presumption that an examining

medical source's opinion is entitled to more weight than the opinion of a medical source who merely

reviewed the record.[20]   But in evaluating the opinions of treating sources, the ALJ must use the so-

called *Goatcher* factors.[21]   These factors are: (1) the length of the treatment relationship and the

frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment

provided and the kind of examination or testing performed; (3) the degree to which the physician's

opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6)

other factors brought to the ALJ's attention which tend to support or contradict the opinion.[22]   It is

apparent from the ALJ's discussion of the medical evidence, and other evidence, that the ALJ

considered Dr. Knapp's opinion, but properly concluded that the weight of the evidence was contrary

---

[18]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

[19]*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

[20]*Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir.2012)(citing C.F.R. §§404.1527(d)(1), 416.926(d)(1), which are now found, with substantially the same language, at 20 C.F.R. §§ 404.1527(c)(1) and 416.927(c)(1)).

[21]*Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6).

[22]*Id.*

8

to Dr. Knapp's opinion and supportive of the opinions of Drs. Kraft and Robinson.

Finally, Plaintiff raises several arguments that he fails to develop in any manner that would allow this Court to meaningfully review the ALJ's decision.  For example, Plaintiff challenges the ALJ's credibility findings concerning the statements of daily activities offered by Plaintiff and his friends, but fails to develop how the ALJ's credibility findings were erroneous.  Plaintiff challenges that the ALJ's finding that Plaintiff is of "advanced age," is inconsistent with his finding that Plaintiff can perform medium level work.  And, Plaintiff generally challenges the ALJ's "statement of facts" by noting, "I agree with some of them and thoroughly disagree with others," without any further explanation or development.  The Court finds that Plaintiff has waived these arguments for failure to adequately develop them.[23]

Moreover, as addressed above, this Court's review of the ALJ's decision is limited to whether the decision is supported by substantial record evidence and whether the ALJ applied the correct legal standards.[24]  The Court is not permitted to re-weigh the evidence or substitute its judgment for that of the ALJ.[25]  For these reasons, the Court also discounts another of Plaintiff's arguments, that is only slightly more developed.  Plaintiff argues that the ALJ erred in finding that at the hearing, Plaintiff appeared together and not under apparent stress, because Plaintiff had undergone bladder surgery the day before the hearing, was wearing a catheter and was under the influence of pain medications.  But

---

[23]*See Wall v. Astrue*, 561 F.3d 1048, 1066 (10th Cir.2009)(claimant's "perfunctory presentation" of claims constituted waiver).

[24]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[25]*Id.*

9

the ALJ made no finding that Plaintiff appeared together and not under stress.  The only such reference to a lack of apparent stress was the ALJ's reference to a medical record in which a treatment provider observed as much.  And even if the ALJ had made such a finding, based on his observations of Plaintiff during the hearing, this Court cannot reweigh the evidence nor substitute its own opinion for the ALJ's observations and findings.

**V.      Conclusion**

For these reasons, the Court concludes that the ALJ did not err in assessing Plaintiff's RFC nor in his ultimate determination that Plaintiff is not disabled.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: July 21, 2015

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE